Commonwealth v. McClucas

*Kristen Weisenberger, deputy district attorney,* for Commonwealth.

*Roger Laguna,* for defendant.

KLEINFELTER, *J.,* September 27, 2006—In almost every case, an opinion written by a trial judge serves the purpose of advising the parties—and perhaps an appellate court—of the rationale under which a decision was rendered in the case. The opinion which follows, however, is intended for yet an additional purpose; namely, to alert the General Assembly to an insufferable provision in the Mental Health Procedures Act, 50 P.S. §7101 et seq.; specifically, section 7402, "Incompetence to proceed on criminal charges and lack of criminal responsibility as a defense." For reasons that will become obvious in this opinion, legislative action is necessary to amend certain anomalous language in this section.

On April 29, 2005, Middletown Police arrested Michael E. McClucas (defendant) on charges of aggravated indecent assault, unlawful contact with minor and corruption of minors. The alleged victims are defendant's stepdaughters, S.B., born March 22, 1992, and R.B., born January 25, 1994. The police allege that defendant engaged in digital penetration of the girls' vaginas. When the acts occurred, defendant was 33 years of age and the girls were aged 10 and 11. The charges were held for court following a preliminary hearing on June 2, 2005. Defendant was formally arraigned on July 14, 2005, and a jury trial set for September 12, 2005. The record is less than clear as to the scheduling of defendant's case for trial thereafter;

however, we do find three documents captioned "Waiver of speedy trial and notice of trial date" in the file. The first is dated November 14, 2005, and sets a trial date of December 12, 2005. The second is dated December 12, 2005, and sets a trial date for January 9, 2006. The third is dated February 24, 2006, and set a trial date for May 8, 2006.[1]

On March 20, 2006, defendant through his attorney, Roger E. Laguna, Esquire, filed a motion for determination of competency. The motion alleges:

"(1) While attempting to prepare for the trial in this case it became apparent that defendant was unable to assist counsel. According to defendant's mother, he has a long history of mental infirmity/retardation and she is forced to act as his guardian.

"(2) Defendant attempted to ascertain the true extent/nature of the infirmity/retardation by having defendant evaluated by a licensed clinical psychologist.

"(3) On March 17, 2006, the undersigned received a written response to the evaluation which is entitled Assessment of Adjudicative Competency Evaluation. In short, defendant has an I.Q. of 57, is mentally retarded, and is not competent to stand trial. The entire assessment is attached hereto as exhibit 'A'." [Not published herein.]

On March 28, 2006, the district attorney filed an answer with new matter which concluded:

"(7) The Commonwealth is seeking to have the defendant evaluated by its own psychiatrist, and upon comple-

---

1. In the interim, on January 10, 2006, defendant filed a petition for pretrial hearing on question of child witness competency and request for psychiatric examination (of the child witnesses). The Commonwealth filed an answer in opposition on February 9, 2006. The petition for a pretrial hearing was thereafter denied by this court on February 14, 2006, with a notation that "competency of the child witnesses shall be determined by the trial judge."

tion of said assessment, requesting a hearing to determine competency."

On March 30, 2006, we issued a rule to show cause as to why defendant should not submit himself to an independent psychological/psychiatric examination by an expert selected by the Commonwealth. On the same date, defendant responded to the Commonwealth's new matter advising that the evaluation referenced in the original motion of March 20, 2006, classified the defendant as "mild mental retardation" and concluded that defendant "does not possess the capacity for a factual understanding of the legal system and the process for adjudication, etc." The evaluator, Louis B. Laguna Ph.D.,[2] further stated: "I do not feel [defendant] will ever meet the standards for adjudicative competency." However, the response did aver: "(7) Defendant has no objection to a psychiatric examination."

On April 10, 2006, defendant filed a response to our rule to show cause which included the averments in his March 30, 2006 response. Defendant's second response further advised:

"(2) Presently, the Commonwealth seeks to have this court order a psychiatric examination of the defendant. Presumably, the Commonwealth is making this request pursuant to 50 P.S. §7402. However, section [7402(e)(3)], states that if such an examination is ordered that during the evaluation defendant 'shall be entitled to have counsel present with him and shall not be required to answer any questions or to perform tests unless he has moved for or agreed to the examination.'

---

2. We learned at a subsequent hearing, that Dr. Laguna and Attorney Laguna are brothers.

"(3) Defendant states that he has not moved for or agreed to the examination. On the contrary, the Commonwealth moves for the examination in an attempt to refute defendant's uncontested evidence of incompetence.

"(4) In the event that an examination would be ordered, defendant's counsel would apparently be obligated under the circumstance of the case to have defendant avail himself of his right to not answer questions or perform tests. No valid psychiatric examination could be conducted under such circumstances. As such, the psychiatric examination requested by the Commonwealth would obviously be invalid and therefore pointless.

"(5) Defendant has already provided the Commonwealth with defendant's expert report. 50 P.S. §7404(b) states that the Commonwealth may call an expert to testify at a competency hearing (if the court grants a hearing) and that defendant may call his own expert(s) to testify. Defendant therefore acknowledges that a psychiatric expert may testify for the Commonwealth about said report at a competency hearing. At the same time, as a practical matter, a pre-hearing psychiatric examination cannot be permitted to be forced upon defendant."

In consideration of the foregoing, on April 11, 2006, we ordered that a hearing pursuant to 50 P.S. §7402(d) be set for May 2, 2006.[3] At the May 2 hearing we defined the scope of the inquiry in accordance with the provisions of 50 P.S. §7402(d) hearing; when required, which provides:

"The court . . . may order an incompetency examination . . . without a hearing unless the examination is objected

___

3. This order vacated an interim order of April 6, entered before defendant's April 10 response, which directed defendant to submit to a psychiatric evaluation.

to . . . by his counsel. In such event, an examination shall be ordered only after determination upon a hearing that there is a prima facie question of incompetency. . . ."

As we deemed an examination to be opposed by defendant (by virtue of his April 10, 2006 response), we directed defense counsel to present his prima facie evidence of incompetency. At this point the deputy district attorney suggested that, if the inquiry of the moment was limited to a prima facie showing of incompetency, it would stipulate to that fact, based on Dr. Laguna's opinion contained in his report. Although we suggested to the deputy district attorney that she might have presented her own expert or engaged Dr. Laguna in cross-examination regarding his report, she was satisfied to stipulate that the report established a prima facie case. Given those circumstances, we dictated the following order:

"And now, May 2, 2006, upon stipulation of the Commonwealth that the defense has made out a prima facie case of incompetency premised on a report filed by Louis B. Laguna Ph.D, undated, but relating to a competency examination on March 9, 2006, which opinion in pertinent part reads as follows:

"'It is my professional opinion that Mr. McLucas [sic] does not possess the capacity for a factual understanding of the legal system and the processes of adjudication. This includes roles of defense and prosecuting attorney, elements of the offense, role of the jury, role of the judge, legal rights and consequences of conviction and pleading guilty.'

"The report further concludes 'It is my professional opinion that Mr. McLucas [sic] does not adequately understand the criminal proceedings against him and does not have a factual and rational understanding of the

criminal proceedings, or the capacity to assist in his defense. Given the pervasive nature of intellectual deficits, I do not feel he will ever meet standards for adjudicative competency.'

"The defendant having, therefore, met the prima facie requirement of incompetency under section 7402, the court orders that the defendant undergo a determination of competency, which determination shall be made on an outpatient basis. The court will designate a psychiatrist to conduct the examination.

"Defendant and counsel are advised that they have the right to be present at the time of the examination and need not answer any questions or perform any tests.

"We further note that nothing said or done by the defendant during the examination may be used as evidence against him in any criminal proceeding. A report shall be submitted by the appointed psychiatrist to the court and to counsel for the Commonwealth and the defendant, which report shall contain the description of the examination and any diagnosis reached as a consequence thereof.

"All references to competency in this order are to be considered under the definition of incompetency as found in section 7402 of title 50, subsection (a).

"By the court.

"/s/Kleinfelter, J."

We then advised counsel that we would appoint a psychiatrist to conduct an evaluation in accordance with section 7402(e) conduct of examination; report. After some research we were able to retain the services of Robert L. Sadoff M.D., of Jenkintown, Pennsylvania. Our order appointing Dr. Sadoff directed that the incompetency examination should take place on June 5, 2006, in the fifth floor conference room of the Dauphin County Court

House. Dr. Sadoff's report of the examination is dated June 6. The report advises that the defendant appeared along with his mother and Attorney Laguna. Laguna quickly informed Dr. Sadoff that he would pursue protection of his client's rights under the Act and would not allow defendant to respond verbally to the doctor's questions. Notwithstanding this advisory from counsel, Dr. Sadoff proceeded to ask defendant a battery of questions concerning his medical and social history, familiarity with the criminal justice system and related matters. Dr. Sadoff's report advises: "It should be noted that Mr. McClucas sat silently during the questioning, and Mr. Laguna, his attorney, responded to each question, indicating that his client would not respond to the question." (Sadoff report, 2.) Dr. Sadoff concludes his report by noting: "Because of Mr. McClucas' unwillingness to respond to my question, I can give no diagnosis and no opinion about his current competency to stand trial."[4]

Upon receipt of Dr. Sadoff's report, the court met with counsel in chambers to determine if the Commonwealth required any further hearing in this matter. Obviously frustrated by the inability to subject defendant to an independent forensic psychiatric examination, she declined to do so.

We are left, on the record, with the unchallenged, and unassailable, report of Dr. Laguna which we are constrained to accept at face value. We are likewise constrained to conclude that Defendant is incompetent to stand trial and that it is unlikely that he will ever gain such capacity. This brings us to our legislative discussion.

---

4. Dr. Sadoff recommended appointment of a forensic psychologist to review the raw data that Dr. Laguna compiled through his testing of defendant on March 9, 2006. This suggestion overlooks the fact that such "raw data" would be protected by the privilege as defined in the Judicial Code, 42 Pa.C.S. §5944.

Our Supreme Court has viewed section 7402 of the Act as intended to guarantee to a defendant "an absolute and basic condition of a fair trial, and conviction of a legally incompetent defendant violates his constitutionally guaranteed due process rights." *Commonwealth v. Appel,* 547 Pa. 171, 187, 689 A.2d 891, 898 (1997). The relevant inquiry "is whether the defendant has sufficient ability at the pertinent time to consult with counsel 'with a reasonable degree of rational understanding,' and have a 'rational as well as factual understanding of the proceedings.'" *Id.* at 188, 689 A.2d at 899. (additional citations omitted) A defendant who asserts his incompetency bears the burden of proof by a fair preponderance of the evidence. *Id* at 189, 689 at 900.

Reading section 7402 in its entirety, it is clear that the General Assembly intended to create an adversarial process in determining the issue of competency. When a defendant asserts his incompetency but objects to an examination, the court is to conduct a hearing and, on finding a prima facie case, shall order a competency examination. Section 7402(d). Section 7402(f) provides for "a psychiatrist retained by the defendant *and a psychiatrist retained by the Commonwealth* to witness and participate in the examination." (emphasis added)

But now here's the glitch. Between subsections (d) and (f) is subsection (e) which in subparagraph (3) provides:

"The person shall be entitled to have counsel present with him and shall not be required to answer any questions or to perform tests unless he has moved for or agreed to the examination."

In the case at bar, defendant had already objected to an independent examination—which fact triggered the prima facie hearing as per subsection (d). Defendant continued to object even as we appointed an independent psychiatrist

and ordered his examination. Thus, the paradox; how, exactly, does one conduct a psychiatric exam of a mute subject?

While we have not researched the legislative history behind the inclusion of the above quoted language from subparagraph (3) of section 7402(e), it would appear that it is intended to serve as a safeguard of an accused's Fifth Amendment right to remain silent. In fact, subparagraph (3) concludes with this sentence: "Nothing said or done by such person during the examination may be used as evidence against him in any criminal proceeding on any issue other than that of his mental condition." It seems to this writer that the latter sentence adequately protects a defendant's Fifth Amendment rights without the sentence that precedes it. But even if this sentence seems to be problematic for an accused, remember that counsel attending the examination may at any time assert the privilege as to any question relating to the underlying offense.

Moreover, it would seem obvious that the objective of all competence questioning would be unrelated to the allegations surrounding a particular charge. When one looks again at the line of questioning put to defendant by Dr. Sadoff during his attempted examination, one will find not a single question relating to the underlying charges. Additionally, the tests (IQ and Mac Arthur Competence Assessment) employed by Dr. Laguna, do not go into the facts of the case.

Finally, it would seem to us that one who asserts his own incompetency to stand trial necessarily waives any right he may have to be free from independent examination on that issue.[5]

---

5. Compare, *e.g.,* the right of a party to seek an independent physical or mental examination of a party in a civil suit. Pa.R.C.P. 4010.

We recommend that the General Assembly consider legislation that would amend section 7402(e)(3) by deleting the words "and shall not be required to answer any questions or to perform tests unless he has moved for or agreed to examination." Another alternative would be to amend the sentence to read: "and shall not be required to answer any questions *that may tend to incriminate him.*"[6]

Either of these alterations would eliminate the anomaly which has occurred in the case before us (and, we suspect, in any number of others) by allowing a meaningful competency examination, the results of which could then be tested and argued adversarily in a court of law.

In the meantime, we are constrained to enter the following:

## ORDER

And now, September 27, 2006, upon consideration of defendant's motion for determination of competency, the Commonwealth's answer filed thereto, and "hearing" held thereon, it is hereby ordered that defendant Michael E. McClucas is found to be incompetent to stand trial under the definition of "incompetency" found in 50 P.S. §7402(a) and, as we are unable to conclude with reasonable certainty that involuntary treatment will provide defendant with the capacity to stand trial, such treatment under section 7402(b) is declined.

---

6. This alternative language would seem to be superfluous given the final sentence in subparagraph three and given the fact that one's Fifth Amendment rights exist independently of any language in the Act.